IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. DLB-23-183 |
| | * | CRIMINAL NO. DLB-23-376 |
| AHMED HUSSAIN, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**\*\*\*\*\*\*\***

**<u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM</u>**

The government writes to respond to three arguments that the Defendant raised in his sentencing memorandum. The government reserves the right to raise additional responsive points at sentencing.

**I.     The Defendant has not substantially reformed since his 2022 arrest.**

The Defendant states that he has demonstrated "substantial signs of reform" since his arrest in November 2022 and the birth of his daughter in February 2023. Def. Sentencing Mem. at 18-20. Such a claim ignores the basic facts of this case.

The Defendant cut off his ankle monitor in August 2024. Eventually, law enforcement found him and charged him with several new offenses: first degree assault, second degree assault, malicious destruction of property, and controlled substance possession. This is the second time that the Defendant has cutoff an ankle monitor. In 2020, he also removed an ankle monitor and absconded. PSR ¶ 77. The Defendant's carbon copy flight attempts show he is not reforming. While under release and under court supervision, the Defendant continued his criminal conduct, ignored the responsibilities in his life, and flouted the conditions of his release.

The Defendant also does not express remorse for removing his ankle monitor. He told his own expert that he did "not really think[] about the consequences of cutting off his box while

1

awaiting trial, only that he wanted to continue making money." Def. Ex. 3 at 5. He further explained to his expert that "he did not know other ways to make money and 'get the things I want.'" *Id.* By his own words, to the Defendant, "making money" means committing crimes. Indeed, as documented in the PSR, the Defendant has never held a legitimate job. PSR ¶ 112. He has instead financially supported himself through criminal activity. And these admissions to his own expert, paired with his conduct on release, cut against any notion of the Defendant's "substantial" reform.

## II.     The Defendant is an adult, as he has previously argued before this Court.

The Defendant now contends that his "youth" mitigates against a long prison term, relying, in part, on an expert report and a white paper. *See* Def. Sentencing Mem. at 23-24; Def. Ex. 3 & Def. Ex. 4. But this new argument is an about face from his prior representations at the detention hearings in this case. There, the Defendant went to great lengths to show the Court that he had matured into a responsible adult who could be trusted not to cut another ankle monitor while on release.

At the pre-trial detention hearing in front of Judge Quereshi, the Defendant's former counsel argued that he had matured since his state convictions because of the "the general maturity and development that happens between when you're 18 and when you're 21." Ex. A (Hussain July 14, 2023 Detention Tr. 32:23-25). The Defendant's third-party custodian also told the Court he was different than when he cutoff his ankle monitor: "[H]e's more mature, he's responsible, he understands, you know, now I have a kid, and, you know, I have things that -- you know, responsibilities and things to do and change." *Id.* at 57:4-7. Judge Quereshi credited these representations in denying the Government's motion for pre-trial detention, "not[ing] that three years, for an individual as young as Mr. Hussain, is more of a significant period of time." *Id.* at 62:15-17; *see also id.* at 66:6-8 ("What he's been doing for the past eight months in terms of

2

complying with conditions is certainly more relevant in the life of a 21-year-old than what they did when they were 18.").

After the government appealed Judge Quereshi's release order, the Defendant continued to emphasize that he was now a mature adult. His counsel explained to this Court that Judge Quereshi had "credited my argument that cognitively there are significant changes that people -- young men undergo during that period of time and that that is a changed circumstance that certainly suggests that he would be less likely to engage in that type of behavior at this time." Ex. B (Hussain July 17, 2023 Detention Tr. 9:11-15); *see also id.* at 13:9-11 (reiterating how the third-party custodian has testified about the "kind of the changes he's gone through in the last eight months, the maturity and growth that she has seen in him"). The Court credited the argument that the three-year "passage of time and the inherent maturity that occurs over that period" warranted pre-trial release. *Id.* at 41:12-13.

If anything, the Defendant's conduct shown that he has matured since 2020 and advanced to committing sophisticated fraud. He now has the ability to execute more long-term crimes. As noted in the Government's Sentencing Memorandum, the Defendant worked with his co-conspirators to coordinate a year-long fraud on Maryland's unemployment insurance program, delegating responsibilities, following up on the status of fraudulent claims, and maximizing the illicit proceeds they were able to obtain. The fraud required the Defendant's forethought, planning, and organization. Perhaps tellingly, the expert report discusses the Defendant's drug-dealing activity, but is silent on his UI fraud scheme.

The Defendant is grasping at straws to avoid a long jail sentence. In July 2023, he was a mature man and expectant father and thus could be trusted on pre-trial release. In August 2025, he is too immature to be held fully responsible for his conduct. The government asks the Court to reject the Defendant's opportunistic change in position.

**III.    The Defendant did not carry a firearm solely for self-protection.**

Still unwilling to admit the gravity of his crimes, the Defendant "maintains the firearm was kept solely for self-protection." Def. Sentencing Mem. at 9. The Defendant, however, admitted in the stipulation of facts that he "possessed the black Honor Defense 9mm handgun in relation to his drug-trafficking activities." ECF No. 101-1. Moreover, as the Court recognized at the detention appeal hearing, while incarcerated on the related state gun case, the Defendant "threatened to put a, quote, 'switch' on [a] person if the person did not give him $9,000." Ex. B (Hussain July 17, 2023 Detention Tr. 38:2-4).

The Defendant has admitted to the possessing a firearm tied to his drug trafficking activities. He has admitted to participating in a wide spread conspiracy to defraud Maryland's unemployment insurance program during a national crisis. He fled from court supervision. These facts merit the significant sentence that the government has requested.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

 /s/
Harry M. Gruber
Christopher Sarma
Joseph L. Wenner
Assistant United States Attorneys

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing government's filing was served via email on the defendant's counsel.


_____/s/_____
Joseph L. Wenner
Assistant United States Attorney